UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| THE PRUDENTIAL INSURANCE COMPANY OF AMERICA; COMMERCE STREET INVESTMENTS, LLC; PRU ALPHA FIXED INCOME OPPORTUNITY MASTER FUND I, L.P.; PRUCO LIFE INSURANCE COMPANY; PRUCO LIFE INSURANCE COMPANY OF NEW JERSEY; THE PRUDENTIAL LIFE INSURANCE COMPANY, LTD.; PRUDENTIAL RETIREMENT INSURANCE AND ANNUITY COMPANY; and PRUDENTIAL TRUST COMPANY,<br><br>     Plaintiffs,<br><br>  -against-<br><br>CREDIT SUISSE SECURITIES (USA) LLC (f/k/a CREDIT SUISSE FIRST BOSTON LLC), CREDIT SUISSE FIRST BOSTON MORTGAGE SECURITIES CORP., ASSET BACKED SECURITIES CORPORATION, and DLJ MORTGAGE CAPITAL, INC.,<br><br>     Defendants. | No. 2:12-cv-07242 (KSH) (CLW)<br><br>**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF ITS APPLICATION FOR ORDER SETTING A SCHEDULE FOR EARLY DETERMINATION OF SAMPLING ISSUES** |

**Preliminary Statement**

Prudential seeks to narrow the scope of discovery by receiving guidance from the Court on whether a statistically sound sample will be admissible evidence, rather than facing the impossible burden of gathering, reunderwriting, and presenting to the jury the over 180,000 loans backing the securities in this case. Without such guidance, significant amounts of time and money will be wasted by the parties and third parties with needless discovery on far more loans than Prudential believes to be necessary to present its case. Credit Suisse offers no persuasive reason why this Court should break with precedent and forego the opportunity to narrow the scope of discovery for the benefit of all involved—including the Court and third parties. Credit Suisse's unjustified resistance to early determination of a sampling methodology—and to the very concept of sampling a population of over 180,000 loans—is no more than an attempt to slow these proceedings and force Prudential to incur unnecessary expense, and should be rejected.

**Argument**

**I.      Courts Have Found That Early Resolution of Sampling Issues Is Appropriate**

As Prudential laid out in its initial Application, several courts have recognized that the unique characteristics of RMBS cases both enable and necessitate early resolution of the sampling issue when a large number of loans are involved (App. at 5-7). The only purported distinction that Credit Suisse can muster between this case and those cited in support of Prudential's request is that *FHFA* and *Countrywide* involved larger numbers of loans and securitizations than does this case (Opp. at 4). That the courts in those cases dealt with more loans and securitizations says nothing about the soundness of their conclusions that (a) sampling expert issues are ripe for *Daubert* objections prior to the close of fact discovery, and (b) there are significant efficiency gains to be had by resolving the sampling issue early. Credit Suisse makes

no effort to, and indeed cannot, dispute that these same efficiency gains would inure in this case with its "mere" 32 securitizations and over 180,000 loans.

Lacking any basis on which to distinguish them, Credit Suisse seeks to explain away *MBIA* and *MassMutual* by mischaracterizing their import. Credit Suisse's assertion that "the court in *MBIA* did not approve the sampling protocol early in the discovery process" (Opp. at 5) is flatly incorrect. *See MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, 2010 WL 5186702, at *5 (N.Y. Sup. Ct. Dec. 22, 2010) ("The court finds that Plaintiff's proposed methodology of statistical sampling may be used at trial."); *see also* Scheduling Order, Addendum Ex. F (indicating that fact discovery was ongoing for nearly ten months following the court's approval of plaintiff's sampling protocol). The language Credit Suisse quotes merely reflects the court's appropriate unwillingness to decide on issues "pertaining to the weight, rather than the acceptability, of the evidence," as such issues are to be resolved by the trier of fact. *MBIA*, 2010 WL 5186702, at *5.

The quoted statement from *MassMutual* was made in this same context. *See MassMutual* Sampling Order, App. Addendum Ex. C, at 5 ("[T]he assurance of admissibility is somewhat limited. As discussed above, should Plaintiff's sampling methodology be approved, Defendants will be able to challenge the ultimate findings before the trier of fact who, in turn, will determine how much weight to accord those results."). Prudential does not seek to have this Court opine on the weight to be given at trial to Prudential's expert's methodology, but rather to offer guidance as soon as possible on the *acceptability* of that methodology.

The cases Credit Suisse cites in support of its bare assertion that "the majority" of courts have rejected such requests support no such conclusion, and most in fact support Prudential's request for early consideration of a sampling methodology. In *Western & Southern Life Ins. Co.*

2

*v. DLJ Mortg. Capital*, the court does not deny plaintiffs' request to seek early sampling approval, and in fact tells plaintiffs they are welcome to bring the issue before him, but only acknowledges that he does not know if the court will be able to decide the at that point. *See W. & S. Life Ins. Co. v. DLJ Mort. Capital, Inc.*, No. 11105352 (Ohio Ct. C.P. June 20, 2013), Hearing Tr. at 25:7-25:13.[1]  While this case involves over 180,000 loans across 32 offerings, *Capital Ventures Int'l v. UBS Securities* involved only 8,000 loans across six offerings, and in any event is, respectfully, an outlier.

In *Assured Guaranty v. DB Structured Products*, the court rejected early briefing because no expert report considering the characteristics of the loans had been submitted.  Prudential's proposal, by contrast, is to have the Court rule only after being presented with an expert report (App. at 4).  *See also MassMutual* Sampling Order at 5-6 (noting that *Assured* was inapplicable because plaintiff in that case had not proposed submitting an expert report, but was asking for an opinion on "a hypothetical method of statistical sampling.").  Prudential, of course, proposes submitting an expert report for this Court's consideration.

In *Federal Home Loan Bank of Chicago v. Banc of America Securities LLC*, the court actually did entertain sampling methodology arguments, found that the plaintiff's sampling expert was a qualified expert, and further found statistical sampling to be an acceptable method of proof; the court also specifically struck reliability and admissibility from the list of defendants' preserved objections.  The outcome in that case is at best unclear (sufficiently unclear, in fact, that the *MassMutual* court refused to follow it because the order was cryptic as

---

[1] It is not clear from the transcript whether Judge Martin's statements were regarding his ability to decide on whether to allow early briefing on sampling, or on whether sampling could be used at all.  *See id.* at 23:21-24:15 ("If someone examines each one of these loans and comes to some reasonable – some conclusion about them, then we got out of the sampling thing. But these loans are individual, and they may well have to be judged individually … I don't know whether it's okay to use sampling in this situation or not").

to its procedural stance), and the fact that the court deferred ruling on the ultimate admissibility of the sample at that point does not support Credit Suisse's argument that courts cannot resolve the sampling issue in the absence of full fact discovery.

Critically, the court only deferred ruling on admissibility because, under the governing *Frye* standard, the court was unsure of whether it even had the authority to issue such an opinion and that under the *Frye* standard the only question was whether the results of the sampling would be helpful to the jury:

> ***What I will say, it looks like it will be helpful. It looks like a good sample design to me*** and we will see after we get the results whether it is or not and I will make that determination as to admissibility. Once we are past that point, it is up to the jury and not me. Do you follow me? ***My gate in terms of opening this evidence up to the jury swings in this case as soon as it looks like it is going to be helpful to the trier of fact.***

*Fed. Home Loan Bank of Chicago v. Banc of America Sec., LLC*, No. 10-2-36526-5 SEA (Wash. Super. Ct. Feb. 8, 2013), Hearing Tr. at 29:1-10, Addendum Ex. G (emphasis added); *id.* at 12:16-13:5 (stating that it was not appropriate for the court "to get involved in how the expert deploys their methodology" because "the most recent decisions from the State Supreme Court [] indicate that how the expert deploys an accepted methodology is not for the trial court but for the trier of fact" and stating that the court had "trouble with the idea that I would also have any authority under anything to decide as a matter of law that this is an appropriate sample design.").[2]

---

[2] Notably, the expert at issue was Dr. Cowan, who the court found was "eminently qualified." *Id*. at 27:7-8. The court also stated that "[t]here is no question either that sampling is a methodology that is widely accepted. Not only in this field, but in litigation very, very similar to this case. It has been used over and over again, and I don't see any serious claim by defendants of any sort that this isn't an approved and accepted method so it plainly meets the *Frye* standard." *Id*. at 27:15-22.

4

Finally, in *Capital Ventures v. J.P. Morgan*, the court had initially agreed that an early determination of the sampling issue was appropriate, and recommended that the parties' experts meet to agree upon a sampling method in order to avoid the necessity of motion practice on the issue. It was only after the experts failed to reach an agreement that the court resolved to proceed with the usual discovery schedule.

## II. No Additional Fact Discovery Is Necessary to Generate a Statistically Reliable Sample

Credit Suisse argues at length that full fact discovery is necessary both for Prudential's expert to develop a reliable sample, and for Credit Suisse to challenge the reliability of that sample. Yet, as Prudential made clear, it need not know what the *actual* features of the loans are; what matters from a sampling perspective is the *represented* features of the loans, all of which are currently available on Credit Suisse's loan tapes. App. at 8-9. Additional factual discovery will not inform whether the sample is statistically valid—that is, whether the sample can be reliably presumed to be representative of the full population of loans—because fact discovery regarding the contents of loan files will not bear on issues, such as appropriate sample size or whether the sample was randomly drawn, that determine whether a sample is valid.

Nonetheless, to the extent Credit Suisse disagrees with Prudential's expert's position that an adequate sample can be generated based on only the information contained in the loan tapes, that disagreement can be registered at a *Daubert* hearing. It is not a reason to deny Prudential the opportunity to convince the court of the validity of its sample sooner rather than later. *See MassMutual* Sampling Order at 5-6 (defendants' arguments about the adequacy of the sampling methodology are "better addressed at the *Daubert* hearing itself.").

Indeed, Credit Suisse's various arguments regarding the necessity of completing fact discovery prior to expert discovery on the sampling issue conflate the objections that Credit

5

Suisse would make at a *Daubert* hearing or before a jury with objections to the timing of that hearing.

Credit Suisse argues that the reliability of Prudential's sample can only be determined with reference to the questions Prudential seeks to answer via its sample (Opp. at 6-7). Yet whether the sampled loans are adequate to answer Prudential's questions is not an issue of the reliability of the methodology used to create the sample, but rather is an issue of what weight should be given to the sample and the conclusions drawn therefrom. As discussed above, arguments as to the weight to be given to evidence are appropriately determined by a fact finder. If Credit Suisse believes that an approved sample is ultimately inadequate to answer Prudential's questions, Credit Suisse may make that argument to the jury. The weight to be given to Prudential's sample by a jury has no bearing on the question of when this Court should determine whether the methodology underlying that sample is acceptable.

Credit Suisse further makes baseless, speculative arguments about how Prudential's expert's sampling methodology will be designed, and what the contents of the expert report will be. Such arguments are no reason to deny Prudential's Application, as Credit Suisse will be free to point out any deficiencies in Prudential's report by way of its *Daubert* objections.

Credit Suisse asserts that Prudential's expert's sampling methodology will necessarily be designed based on assumptions regarding the eventual reunderwriting that will be done on the sampled loans (Opp. at 8). Prudential disagrees with this contention, but in any event, if Credit Suisse does believe that the sampling methodology was created on the basis of "speculative" assumptions, that objection can be raised at a *Daubert* hearing. So too can Credit Suisse raise the various flaws it has presumed will be present in Prudential's expert report (Opp. at 8-13) at a

*Daubert* hearing.[3] That Credit Suisse has contemplated potential objections based on imagined flaws in an as-yet nonexistent expert report is no reason to delay consideration of those objections until after the close of fact discovery.

Finally, as Prudential conceded in its Application, should truly new circumstances arise, such as a finding that many sampled loan files are not available, or that Prudential is not adhering to the approved methodology, as Credit Suisse's opposition contemplates, such circumstances could justify revisiting the sampling issue. *See* App. at 10.

### III. Early Determination of Sampling Issue Will Greatly Narrow Discovery

There are significant benefits to be had to all parties, including third parties, the Court, and the jury, by determining the sampling issue early on. Without an early ruling on the admissibility of its sampling methodology, Prudential will be forced to collect and reunderwrite significantly more loans than would be necessary to develop a reliable sample, or would be practicable to present to a jury. *See* App. at 1-3. This would require subpoenas to third parties who hold the loan files, and possibly motions to compel before this Court.

Credit Suisse is correct that granting Prudential's Application will not limit Credit Suisse's discovery rights; Credit Suisse will remain free to collect and review whatever loan files it likes in order to construct its own defensive sample or otherwise rebut Prudential's arguments (Opp. at 13-14). Yet unless Credit Suisse plans to gather and review all of the over 180,000 loans at issue in order to defend against Prudential's case, its assertion that an early ruling on sampling will not narrow the scope of discovery is simply not credible. An early decision on

---

[3] Credit Suisse makes much of the fact that other expert reports on sampling submitted by Dr. Cowan did not indicate how the results of the sample would be extrapolated. This same argument was raised by the Defendants in *MassMutual*, in which the court was clear that such arguments are "better addressed at the *Daubert* hearing itself." *MassMutual* Sampling Order at 5-6.

7

sampling would not only prevent Prudential from having to undertake such costly and burdensome measures, but would also benefit Credit Suisse by limiting the number of loans that Credit Suisse would need to rebut with its own expert, and providing early guidance to Credit Suisse, in developing its own defensive sample, on what the Court considers acceptable sampling methodology.  *See* App. at 11.

Prudential does not seek, as Credit Suisse purports, to have this Court guarantee that Prudential's expert testimony will not ultimately be excluded for reasons unrelated to the acceptability of its sampling methodology (Opp. at 14-15).  Prudential seeks to avoid the significant waste of time and money—as well as the burdens on third parties, the Court, and the jury—that would result from gathering and reunderwriting substantially more loans than necessary in order to create a "safety net" against eventual challenges to the sampling methodology.

### Conclusion

For the reasons set forth above and in Prudential's Application, Prudential respectfully requests that the Court grant Prudential's Application for an Early Determination of Sampling Issues.

Dated: August 27, 2013                                  NUKK-FREEMAN & CERRA, P.C.

By: s/ Robin H. Rome
Robin H. Rome
636 Morris Turnpike, Suite 2F
Short Hills, New Jersey 07078
Tel: 973.564.9100

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Daniel L. Brockett
David Burnett
51 Madison Avenue, 22nd Floor
New York, New York 10010
Tel: 212.849.7000
Fax: 212.849.7100

8