**<u>ADDENDUM</u>**

## ADDENDUM EXHIBIT F

*MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, No. 602825/08, Stipulated Order Regarding Pretrial Schedule (N.Y. Sup. Ct. May 24, 2011)

RECEIVED

MAY 23 2011

PART 3
NYS SUPREME COURT - CIVIL

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

MBIA Insurance Corporation

                     Plaintiff,

       -against-

Countrywide Home Loans, Inc., Countrywide
Securities Corp., Countrywide Financial Corp.,
Countrywide Home Loans Servicing, L.P. and
Bank of America Corp.,

                   Defendants.

Index No. 602825/08

IAS Part 3 (Bransten, J.)

[PROPOSED] STIPULATED ORDER
REGARDING PRETRIAL SCHEDULE

## [PROPOSED] STIPULATED ORDER REGARDING PRETRIAL SCHEDULE

**IT IS HEREBY STIPULATED AND AGREED** by and between counsel for the

Plaintiff MBIA Insurance Corporation ("MBIA"), counsel for Defendants Countrywide Home

Loans, Inc., Countrywide Securities Corporation, Countrywide Financial Corporation,

Countrywide Home Loans Servicing, L.P. (collectively, "Countrywide"), and counsel for

Defendant Bank of America Corporation ("BAC") that:[1]

1.     Production of Documents from Ten Additional Countrywide Custodians:

        (a)     Countrywide has completed its collection of responsive documents
for the following ten additional Countrywide custodians: (i) Wei Wang, (ii) Steve
Trentacosta, (iii) Karen Jewett, (iv) Jeff Speakes, (v) Scott Spear, (vi) Kevin John, (vii)
Ken Scheller, (viii) Carol Leys, (ix) Vivian Daily, and (x) William Endicott.

        (b)     On or before June 3, 2011, Countrywide shall complete its
production of responsive documents for the first eight additional Countrywide custodians
identified in Paragraph 1(a), *supra*.

        (c)     On or before June 10, 2011, Countrywide shall complete its

---

[1]   The schedule below is based on the parties' current understanding as to the scope of outstanding discovery.
Should the scope of discovery change substantially, the parties reserve the right to seek leave of the Court to
further modify this schedule to address, among other things, the deadlines for expert disclosures and discovery
and summary judgment on the successor-liability claim.

MBIA v. Countrywide                                          p. 2

production of responsive documents for the final two additional Countrywide custodians identified in Paragraph 1(a), *supra*.

2.      Production of Documents from Two Additional BAC Custodians:  On or before June 17, 2011, BAC shall complete its production of responsive documents for the following two additional BAC custodians: (i) Michael Friedlander; (ii) Greg Hobby.

3.      Completion of All Document Production:

        (a)      All document discovery by the parties shall be completed on or before June 17, 2011.

        (b)      On or before June 30, 2011, the parties shall exchange supplemental privilege logs for any documents withheld, in whole or in part, on the basis of privilege, or clawed back between November 30, 2010 and June 17, 2011.

4.      A status conference shall be held on or about ~~August 1, 2011, or at such time that~~ August 15, 2011, at 2:15 p.m., or a nearby date convenient to the parties and the court. ~~is convenient for the Court.~~

5.      Fact Depositions:

        (a)      On or before May 20, 2011 at 5:00 p.m., the parties shall exchange lists of: (i) all outstanding fact depositions and second day depositions (including all deponents identified in the parties' correspondence of April 14, 2011 and any additional requests for depositions made on or before May 6), and (ii) two to three proposed deposition dates for each deponent listed in Paragraph 5(a)(i) who is represented by (i) Quinn Emanuel Urquhart & Sullivan, LLP, (ii) Goodwin Procter LLP or Gunster, Yoakley & Stewart, P.A., or (iii) O'Melveny and Myers LLP.

        (b)      On or before May 27, 2011 at 5:00 p.m., the parties will agree on the dates that the witnesses listed in Paragraph 5(a) will be deposed.

        (c)      All depositions on oral questions of witnesses who are former and current employees of MBIA, the Countrywide Defendants, and any third party witnesses relevant to MBIA's claims of primary liability shall be completed on or before August 5, 2011.

        (d)      All depositions on oral questions of witnesses who are former and current employees of BAC relevant to MBIA's claim of successor liability shall be scheduled to commence no earlier than July 5, 2011, and shall be completed or stayed consistent with the Court's Order on BAC's Motion to Stay and Sever following the June 29, 2011 hearing on that motion.

        (e)      All fact deposition discovery, including any depositions of former

MBIA v. Countrywide                                    p. 3

or current employees of BAC subject to the Court's ruling at the June 29, 2011 hearing, shall be completed on or before October 7, 2011.

6.    Expert Discovery

(a)    Initial expert reports relating to primary liability against the Countrywide Defendants concerning issues on which each party bears the burden of proof shall be completed on or before September 12, 2011.

(b)    Expert rebuttal reports relating to primary liability against the Countrywide Defendants shall be completed on or before October 31, 2011.

(c)    Expert depositions relating to primary liability against the Countrywide Defendants concerning issues on which each party bears the burden shall be completed on or before November 18, 2011.

(d)    If an expert surrebuttal report is filed by any expert, it shall be filed no later than seven (7) days before the taking of any related expert depositions and shall be limited to fifteen (15) pages.

(e)    Initial expert reports on the issue of successor liability, if any, subject to the Court's ruling at the June 29, 2011 hearing, shall be completed on or before October 21, 2011.

(f)    Expert rebuttal reports on the issue of successor liability, subject to the Court's ruling at the June 29, 2011 hearing, shall be completed on or before November 4, 2011.

(g)    Expert depositions on the issue of successor liability, subject to the Court's ruling at the June 29, 2011 hearing, shall be completed on or before November 18, 2011.

7.    A status conference shall be held on or about November 22, 2011.

8.    MBIA shall file a note of issue/certificate of readiness on or about November 22, 2011.

9.    Motions for Summary Judgment:

(a)    Any motions for summary judgment shall be served by December 14, 2011.

(b)    Answering briefs in response to any motion for summary judgment shall be served sixty (60) days after service of any motions for summary judgment.

(c)    Reply briefs in support of summary judgment shall be served thirty (30) days after service of any answering briefs.

*MBIA v. Countrywide*          *P. 4*

10. Trial of this action will commence on _____ per order of the Court.

*completion of any appeals of summary judgment decisions, upon a date set as per*

Dated: May 25, 2011
New York, New York

**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**

By: _____
    Peter E. Calamari
    Philippe Z. Selendy
    Jonathan B. Oblak
    Manisha M. Sheth
    51 Madison Avenue
    New York, New York 10010
    Tel: (212) 849-7000

*Attorneys for Plaintiff
MBIA Insurance Corp.*

**GOODWIN PROCTER** LLP

By: _____
    Mark Holland
    Abigail K. Hemani
    The New York Times Building
    620 Eighth Avenue
    New York, New York 10018
    Tel: (212) 813-8800

    Paul F. Ware, Jr.
    Sarah Heaton Concannon
    GOODWIN PROCTER LLP
    Exchange Place
    53 State Street
    Boston, MA 02109
    Tel: (617) 570-1000

*Attorneys for Defendants
Countrywide Home Loans, Inc., Countrywide
Securities Corp., Countrywide Financial
Corp., and Countrywide Home Loans
Servicing, L.P.*

Of Counsel:

Thomas M. Hefferon
GOODWIN PROCTER LLP
901 New York Avenue, N.W.
Washington, D.C. 20001
Tel: (202) 346-4000

David M. Wells
William E. Adams, Jr.
GUNSTER, YOAKLEY & STEWART, P.A.
One Enterprise Center
225 Water Street Suite 1750
Jacksonville, Florida 32202
Tel: (904) 354-1980

MBIA – Countrywide                              602825/08        P. 5

O'MELVENY & MYERS LLP

By:  _____
     Jonathan Rosenberg
     William J. Sushon
     Asher Rivner
     7 Times Square
     New York, New York 10036
     Tel: (212) 326-2000

*Attorneys for Defendant*
*Bank of America Corp.*

SO ORDERED:

_____
Eileen Bransten, J.S.C.

24 day of May, 2011

## ADDENDUM EXHIBIT G

*Fed. Home Loan Bank of Chicago v. Banc of America Sec., LLC*, No. 10-2-36526-5 SEA, Excerpt of Hearing Transcript (Wash. Super. Ct. Feb. 8, 2013)

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR KING COUNTY

_____

FEDERAL HOME LOAN BANK        )
OF CHICAGO,                    )
                              )
          Plaintiffs,          )   KING COUNTY CAUSE
                              )   No. 10-2-36526-5 SEA
     vs.                       )
                              )
BANC OF AMERICA SECURITIES     )
LLC., ET AL.                   )
                              )
          Defendants.          )
_____




TRANSCRIPT OF PROCEEDINGS


February 8, 2013



BEFORE THE HONORABLE CATHERINE SHAFFER


*************************************************************



JANET R. HOFFMAN
Official Court Reporter
King County Superior Court
516 Third Avenue, C912
Seattle, Washington, 98104
(206) 296-9177

```
 1                    A P P E A R A N C E S:

 2

 3              MS. AMY WILLIAMS-DERRY,
                   Attorneys at Law,
 4
           Appeared on behalf of the Plaintiffs;
 5

 6              MR. JOHN D. PERNICK,
                   Attorneys at Law,
 7
        Appeared on behalf of the Defendants WAMU
 8

 9
                MR. CHRISTOPHER MALLOY
10                 Attorney at Law
                 Appeared by Telephone
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
1              report from Dr. Cowan in July of last year

2              with a 95 percent confidence interval.  It is

3              what Judge Rakoff did, it is what Judge Cote

4              did recently in the FHFA cases before her in

5              the Southern District of New York.

6                   We have also proposed a sample design that

7              will allow for the plus or minus 5 percent

8              margin of error and that is the margin of

9              error that we are seeing in most of these

10             cases.  Judge Cote, in fact, in FHFA cases

11             approved a sample methodology that would allow

12             for greater margin of error plus or minus 10

13             percent.  So we are seeing 5 percent in most

14             of the cases, 10 percent in that case.

15                  That case, of course, it is huge.  It

16             involves almost 450 securitizations and I

17             believe over a million loans.  So the sample

18             size there was significantly larger than the

19             sample size we are proposing here.

20                  If I can direct Your Honor's attention to

21             the materials we have presented.  Page 2 you

22             will see the five-step process that we have

23             outlined and I believe what we are asking you

24             to do today is consistent with what the

25             court's comments were steps 1 and 2, decide
```

1       sampling is appropriate and agree on a sample

2       design.  The later steps we can address

3       later.

4           Defendants retain all of their ability to

5       challenge these other steps later.  And that

6       is namely drawing the samples, testing the

7       samples, re-underwriting the samples and then

8       drawing any conclusions from those samples.

9           THE COURT:  Let me jump into the area

10      where I am having problems here.  I am not

11      having problems reaching the idea of whether

12      or not you presented a qualified expert and I

13      am not having problems with reaching to

14      whether or not sampling is or is not a

15      technique that raises Frye concerns.

16          I do have problems with agreeing on a

17      sample design because I don't think it is

18      appropriate for the court to get involved in

19      how the expert deploys their methodology.

20          And I also think that it could be an issue

21      that could be raised later as to

22      admissibility.  I doubt it under the most

23      recent decisions from the State Supreme Court

24      which indicate that how the expert deploys an

25      accepted methodology is not for the trial

1    court, but for the trier of fact.

2         But I really have trouble with the idea

3    that I would also have any authority under

4    anything to decide as a matter of law that

5    this is an appropriate sample design.

6         MS. WILLIAMS-DERRY:  I think that question

7    can be answered quite readily.  And really,

8    when you look at Dr. Barnett's criticisms of

9    Dr. Cowan's report, they are really

10   observations.  They are not really

11   criticisms.

12        Dr. Barnett is really in large part in

13   sync with what Dr. Cowan has proposed.

14        They both agree a 95 percent confidence

15   interval is standard, that a 5 percent margin

16   of error is appropriate here.

17        Dr. Barnett states and I think Dr. Cowan

18   handles this in his rebuttal report that he

19   believes some other smaller margins of error

20   may be appropriate.  But he is referring to

21   things like public opinion polling, which are

22   clearly not applicable here.

23        Once you know the population and you agree

24   on the confidence interval and the margin of

25   error, it is a simple mathmatic formula that

1            be able to evaluate ultimately whether the

2            specific margin of error for each conclusion

3            that we seek to have drawn, whether that

4            margin of error is appropriate.

5                 THE COURT:  Thank you.

6                 MR. PERNICK:  My I just address  --

7                 THE COURT:  No.  It is a motion, the

8            person that brings the motion argues first,

9            then we get a response, then we get rebuttal

10           and then I rule.  That is the way it works for

11           future reference.

12                All right folks.  Let's turn to the

13           motion.  I view this motion as much more

14           limited than the defendants, I think, were

15           afraid it might be.  I do not view this as a

16           motion to admit an opinion that hasn't been

17           rendered yet which is essentially the gist of

18           the objection that I drew.

19                There are really three questions for the

20           court to determine before a jury considers an

21           expert opinion.

22                And the first is whether or not the expert

23           is qualified.  Because, obviously, if the

24           expert lacks training and experience in the

25           field then they aren't going to be testifying

1          to the jury as to an expert opinion.  There is

2          really no argument here about that.

3              These experts politely disagree with each

4          other, but nobody questions anybody else's

5          abilities and qualifications and that is very

6          understandable given how deep they are on both

7          sides.  So it is clear that the plaintiff's

8          expert is eminently qualified.  And I think I

9          can also say that doesn't seem to be disputed

10         in any way on this motion.

11             The second question is the methodology

12         used, since we are not a Daubert state by any

13         means, although we may be in the future in

14         some areas.  We are still under Frye.

15             There is no question either that sampling

16         is a methodology that is widely accepted.  Not

17         only in this field, but in litigation very,

18         very similar to this case.  It has been used

19         over and over again, and I don't see any

20         serious claim by defendants of any sort that

21         this isn't an approved and accepted method so

22         it plainly meets the Frye standard.

23             The third issue is the one I am not

24         willing to address today and that is whether

25         or not the opinion that is ultimately rendered

```
1          will be helpful to the trier of fact.  Because
2          that I think is where the real problem is
3          right now from the defendant's point of view
4          with agreeing to this motion and eliminating
5          the need for this hearing.  And that goes to
6          the issue that the plaintiffs would like me to
7          resolve today, but I don't think I can, which
8          is the issue about whether the proposed sample
9          design is going to be helpful to the jury.
10              From my point of view, given what I know
11         about the plaintiff's allegations right now, I
12         don't see any reason why it wouldn't be.  That
13         I can say.  I don't have concerns.  And I
14         don't think defendants are able to point to
15         any specific concerns as yet.
16              What they can say is down the road there
17         might be some.  Because they aren't sure they
18         are at the bottom of what the plaintiff is
19         alleging here.  So they are not sure,
20         depending on whether plaintiff's claims as to
21         what they relied upon changes or narrows,
22         whether or not the sample design is going to
23         be helpful to the jury or not.  That is what I
24         hear them saying and I think that is a
25         legitimate point.
```

```
 1              What I will say, it looks like it will be
 2        helpful.  It looks like a good sample design
 3        to me and we will see after we get the results
 4        whether it is or not and I will make that
 5        determination as to admissibility.  Once we
 6        are past that point, it is up to the jury and
 7        not me.  Do you follow me?  My gate in terms
 8        of opening this evidence up to the jury swings
 9        in this case as soon as it looks like it is
10        going to be helpful to the trier of fact.
11              But that is an issue I will sit on until
12        much later in this case.  Certainly until this
13        discovery -- strike that -- this expert
14        assessment has been done.
15              I hope that meets everybody's concerns.  I
16        think that allows the plaintiffs to move
17        forward with a relative degree of confidence.
18        Plaintiffs are in control of their own
19        allegations as to what they relied on and when
20        in this case and I think they have a pretty
21        good idea what that is.
22              Let's turn to our next order of business
23        which is your status conference.  I am going
24        to excuse my court reporter and take off my
25        robe and step off the bench to meet with all
```

1   of you probably in the courtroom given the

2   volume of people we have today and we will see

3   if we can get an order on the status

4   conference too.  I will talk to you informally

5   about the motion to compel at that point with

6   the understanding I can't say a lot given I

7   haven't read the response and reply and that

8   Chase isn't here.

9    MS. WILLIAMS-DERRY:  I have an order on

10   the sampling motion.  May I present that?

11    THE COURT:  First show it to counsel.

12    MR. PERNICK:  No.  Is it the same order as

13   before?

14    MS. WILLIAMS-DERRY:  No.

15    THE COURT:  No.  You look, you decide, and

16   you edit according to reflect my ruling.  If

17   there is a fight about that, we will chat

18   about that at the status conference which is

19   going to be in a few minutes.  Thanks

20   everybody.  We are in recess.

21

22

23

24

25