# NUKK-FREEMAN & CERRA, PC
EMPLOYMENT ATTORNEYS

October 8, 2013

**VIA ECF AND FACSIMILE (973) 776-7865**

The Honorable Cathy L. Waldor
United States Magistrate Judge
United States District Court, District of New Jersey
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, NJ 07101

Re:   *The Prudential Insurance Company of America, et al. v. Credit Suisse Securities (USA) LLC*, Docket No. 12-cv-7242 (KSH)(CLW)

Dear Judge Waldor:

Pursuant to Your Honor's invitation during the September 25 oral argument, we submit the following letter to detail why Magistrate Judge Madeline Cox Arleo's denial of Prudential's early sampling motion in its case against Goldman Sachs (the "*Goldman* case") does not compel the same result here.[1]

Prudential respectfully believes that the factors which Judge Arleo analyzed in denying an early determination on a sampling methodology—efficiency and fairness—weigh in favor of **granting** Prudential's application in this case, not denying it. As an initial matter, Judge Arleo expressly recognized that the Court has the discretionary power to grant Prudential's motion. *Goldman* Tr. at 5:2-3. Thus, it is appropriate for this Court to address sampling early, particularly in light of the fact that this case involves nearly **twice the number of loans and RMBS trusts** as those at issue in the *Goldman* case. In this much larger case, the Court should exercise its discretion and follow the persuasive authority of the several courts that have considered and approved of sampling early in the discovery process.[2] Exercising its discretion in this way, the Court will save time and resources not only for Prudential, but for third parties, the Court, and even Credit Suisse.

---

[1] By letter dated September 27, 2013, Credit Suisse forwarded Your Honor a copy of the transcript of the September 25 oral argument before Judge Arleo. Plaintiffs are collectively referred to herein as "Prudential."

[2] The case law is addressed at length in Prudential's moving and reply briefs. In particular, Prudential directs the Court to the *FHFA* and *MassMutual* decisions, both of which are enclosed for the Court's convenience. *Fed. Hous. Fin. Agency v. JPMorgan Chase & Co.*, 2012 WL 6000885, at (footnote continued)

# NUKK-FREEMAN & CERRA, PC
EMPLOYMENT ATTORNEYS

The Honorable Cathy L. Waldor
October 8, 2013

### The Narrow Scope of Prudential's Proposed Early Sampling Expert

At the outset, we reiterate the narrow scope of the proposed expert sampling report. Prudential intends to show that representations made in offering materials for each of the RMBS trusts at issue were false by re-underwriting a sample of the loans in each trust, rather than re-underwriting all of the 180,000 loans in the 32 trusts, which is a practical impossibility. Credit Suisse continues to object to the use of any type of sampling in this case. Opp. Br. at 1, fn.3; *CS* Tr. at 8:20-23 (a copy of the transcript is enclosed). The sheer volume of the paper documents at issue makes Defendants' position unworkable. The loan files alone comprise more than *54 million* pages. Re-underwriting each of these loans would easily cost over *$70 million*, and could take years to complete due to the limited availability and capacity of mortgage re-underwriting firms.

In light of this, Prudential asks this Court for permission to submit an expert report that will propose a sample size as well as the methodology for ensuring the sample is drawn randomly, and will opine as to the resulting "margin of error" and "confidence level" of the sample. Both are determined exclusively by the total population size and the sample size.[3] Critically, the margin of error and confidence level of a sample are driven exclusively by the size of the total population and the size of the sample.[4] As long as the variable is binary (yes or no), these numbers are not dependent on the variable being measured or the type of population. While Defendants may argue to the jury about the weight to be given to the results of the sample of loans that Prudential re-underwrites, these numbers are laws of statistics that are reliable, well established, and not subject to dispute. *See generally FHFA*, 2012 WL 6000885, at *4-6 (discussing the technical aspects of sampling).

In opposing early sampling, Defendants argue that discovery must take place before the sampling expert's opinions are rendered. That is simply not accurate. The sampling expert's opinions will be based solely on a statistical analysis, specifically a statistical analysis of the loan characteristics represented in the loan tapes and the legitimacy of the statistical analysis. Prudential's sampling expert will not opine on the results of any investigation of the sampled mortgage files or any ultimate fact—that will be done by separate experts according to the normal case management schedule. *See MBIA Ins. Corp. v. Countrywide*, 30 Misc.3d 1201(a), *7 (N.Y.

---

*11 (S.D.N.Y. Dec. 3, 2012) ("*FHFA*"); *In re Massachusetts Life Ins. Co. Litig.*, No. 11-cv-30039, Sampling Order (D. Mass. Mar. 5, 2013) ("*MassMutual*").

[3] The confidence level refers to the percentage of time that the actual value for the population will be within the specified range, or margin of error, shown in the sample.

[4] A sample of 100 drawn randomly out of a large population will produce a margin of error of approximately 10% +/- with a confidence level of 95%. A sample of 400 drawn randomly out of a large population will produce a margin of error of approximately +/- 5% with a confidence interval of 95%.

NUKK-FREEMAN & CERRA, PC
EMPLOYMENT ATTORNEYS

The Honorable Cathy L. Waldor
October 8, 2013

Sup. Ct. N.Y. Cty. Dec. 22, 2010) (granting early motion on sampling and observing that "[s]ampling itself is not proof, but merely a vehicle to present evidence."). Thus, contrary to Defendants' claim, no discovery—other than the loan tapes—will be necessary either to support the report or to attack it on *Daubert* grounds.

### **Efficiency Weighs in Favor of Addressing Sampling Early**

In the *Goldman* Order, Judge Arleo found that addressing Prudential's proposed sampling methodology early would be inefficient because the Court and Defendants may need to brief and address the issue twice. *Goldman* Tr. at 24:18-22. Judge Arleo expressed concern that if the sampling expert's methodology is rejected, the court may need to address the issue a second time. *Id.* at 24:23-25. That concern is illusory because this possibility exists regardless of whether the sampling issue is addressed early in the case. Any time a litigant's expert report is rejected under *Daubert*, the litigant may address the reasons the report was stricken and proffer further support of its position. *Cf. Macsenti v. Becker*, 237 F.3d 1223, 1234 (10th Cir. 2001) (upholding a finding that *Daubert* motion was untimely when "[t]he proponent of the evidence was deprived of the opportunity to offer other supporting proof from [the expert] and the literature"); *FMS, Inc. v. Volvo Const. Equip. N. Am., Inc.*, 00-cv-8143, 2007 WL 844899, at *8 (N.D. Ill. Mar. 20, 2007) ("Raising *Daubert* objections to expert testimony after the close of all the evidence . . . both deprives the Court of an opportunity to conduct a meaningful analysis and the opposing party the opportunity to bolster its proof."). As we have stated, if Prudential's expert report is rejected by the Court, Prudential will not offer additional support for its sampling methodology until fact discovery is complete. Thus, addressing sampling now simply alters the timing of deciding a single *Daubert* motion—it does not *create* any inefficiencies. Prudential is not asking for any new rights it would not already have if *Daubert* motions proceeded along the usual timetable.

Judge Arleo also expressed concern that if Prudential's early sampling methodology is deemed insufficient, Prudential will be able to revisit or readjust the rulings after discovery. *Goldman* Tr. at 25:5-9. But as explained above, Prudential's expert sampling report will not be materially altered by discovery. The expert sampling report will even set forth an alternative methodology to the extent that the loan files supporting the sample are unavailable. And to the extent the methodology may need to be adjusted should particular loan files be unavailable, Judge Cote directly addressed the point in *FHFA*, finding that "the need for substitution . . . is not a reason to reject a sampling approach altogether." *FHFA*, 2012 WL 6000885, at *11. Judge Cote recognized that "[i]n any case, the defendants have been given notice of the plaintiff's initial draws [of loans to sample] and will thus be able, after their own investigation, to raise any such arguments in disputing the weight to be afforded to the plaintiff's final samples." *Id.*

More critically, the *Goldman* ruling ignores the flipside of the efficiency calculation—the benefits to ***both parties, as well as third parties***, of addressing sampling early. Notably, Defendants do not concede the use of sampling whatsoever. *CS* Tr. at 8:20-23. Thus, under Defendants' view, Prudential would need to re-underwrite all 180,000 loans at issue to be certain that it may present its

NUKK-FREEMAN & CERRA, PC
EMPLOYMENT ATTORNEYS

The Honorable Cathy L. Waldor
October 8, 2013

case to a jury. Even if Prudential assumes that Defendants eventually will acknowledge the near universal acceptance of sampling in RMBS cases, the failure to define the acceptable parameter of a sample early will require Prudential to gather and re-underwrite, at a minimum, many thousands of additional loans to insure against a fatal *Daubert* attack. Those costs are imposed not only on Prudential, but on the third-parties that actually hold the loan files, as well as on individual borrowers and their employers, who may need to be contacted in the course of re-underwriting each loan. Further, they impose a heavy burden on Defendants, who will have to examine all the loans that Prudential is forced to re-underwrite. These costs—as Judge Cote recognized in *FHFA*—are "enormous" and far outweigh any additional costs of briefing the sampling motion twice.

Efficiency alone weighs heavily in favor of addressing a sampling methodology early in the case. *See FHFA*, 2012 WL 6000885, at *3 ("Early vetting of the parties' sampling protocols is particularly important in this case, as the plaintiff and defendants should not be required to begin the costly and time-consuming process of reunderwriting without some assurance that the samples will be deemed admissible."); *MassMutual* Sampling Order at *5 (finding that "'early vetting' of plaintiff's sampling protocol can limit" the costs and expenses of re-underwriting).

### Fairness Weighs in Favor of Addressing Sampling Early

Second, Judge Arleo found that addressing sampling early would be unfair to Goldman Sachs because Goldman would be required to disclose any flaws in Prudential's proposed methodology early, thus allowing Prudential a "second bite" at the apple. *Goldman* Tr. at 17:6-13; 25:21-26:7. Notably, Defendants did not even make this argument in its opposition to Prudential's application. Although Defendants argue (incorrectly) that addressing sampling before fact discovery is completed prejudices them because they do not have the information to competently challenge the report, that argument was rejected in *MassMutual*, which recognized, as we have argued here, that the sampling report will be based only on "a review of the same loan tapes available to Defendants." *MassMutual* Sampling Order at *3. No additional facts are necessary for Prudential's expert to create a sample and apply the statistical analysis, and no additional facts are necessary for Defendants to challenge the sampling methodology. If anything, early determination of sampling would benefit Defendants, by giving them valuable insight into Prudential's strategy regarding a loan sample. This was recognized in both *MassMutual* and *FHFA*. *See id.* ("Indeed, as was noted by the court in *FHFA* . . . '[t]he identification of the loans chosen by the plaintiff will permit the defendants to conduct their own re-underwriting of the plaintiff's loan samples, and to evaluate just how well or poorly the originators, and indeed the underwriters of the securities, performed their work.'") (quoting *FHFA*, 2012 WL 6000885, at *3).

### Conclusion

In sum, this Court has discretion to follow the many other cases that have decided that sampling is an important issue that should be decided at the start of discovery, saving all the parties involved time and expense. The issue is one for the discretion of the Court, and there is no danger of

**NUKK-FREEMAN & CERRA, PC**
EMPLOYMENT ATTORNEYS

The Honorable Cathy L. Waldor
October 8, 2013

inconsistency. In combination with the factors discussed above, the fact that Prudential's proof against Defendants will involve approximately twice the number of deals and loans at issue in *Goldman* provides a compelling reason to address sampling now and avoid imposing unnecessary burdens on Prudential, third parties, Defendants and the Court.

Respectfully submitted,

Robin H. Rome

Enclosures

cc:   Counsel of Record (*via* CM/ECF)